IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES MANIER,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**MARIO DALPRA and**<br>**PAGE ETC., INC.,**<br><br>        **Defendants.** | Case No. 3:20-CV-00329-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is Plaintiff James Manier's Motion to Compel. (Doc. 150). Manier seeks a complete response to eight requests for production regarding the financial condition of Defendant Page Etc., Inc. ("Page Etc.") for the purpose of assessing punitive damages. (*Id.*). Page Etc. filed a response in opposition. (Doc. 153). For the reasons discussed below, the motion in granted in part.

### LEGAL STANDARD

"District courts have broad discretion in discovery matters[.]" *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). Under Federal Rule of Civil Procedure 26, discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Strong public policy considerations favor the disclosure of relevant materials

such that "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

### DISCUSSION[1]

Manier requests that the Court order Page Etc. to fully respond to paragraphs one through eight of his Second Set of Requests for Production. Specifically, Manier seeks income tax returns, balance sheets, annual reports or other financial statements or disclosures issued

---

[1] With much dismay, the Court must address an issue with Page Etc.'s responsive briefing. In reviewing Page Etc.'s memorandum, the Court readily discovered that it contained copied material in a substantial portion—two and a half pages—of the argument section. The material appears to be directly copied from an American Law Reports annotation collecting and summarizing related cases. *See* Martin J. McMahon, Annotation, *Discovery of Defendant's Sales, Earnings, or Profits on Issue of Punitive Damages in Tort Action*, 54 A.L.R. 4th 998 (1987). Beginning on page five and continuing to page eight of Page Etc.'s filing (Doc. 153), the analyses of the following cases were copied nearly identically: *Chenoweth v. Schaff*, 37 F.R.D. 587 (W.D. Pa. 1983); *Leidholt v. District Court In and For City and County of Denver,* 619 P.2d 768 (Colo. 1980); *Skinner v. Aetna Life Ins. Co.*, No. 83-0679, 1984 U.S. Dist. LEXIS 19817 (D.D.C. Feb. 2, 1984); *Samulewski v. Gerald Ork, et al.* (unable to confirm citation as the case is unavailable in both Westlaw and Lexis databases); and *Cobb v. Superior Court of Los Angeles County*, 99 Cal. App. 3d 543 (Cal. Ct. App. 1979). Not only is the legal analysis reproduced virtually verbatim, but the brief also contains no reference to the source of the appropriated analysis. Simply put, this constitutes plagiarism.

Many courts have found that plagiarism is not only unacceptable but violates professional ethics standards. *Consolidated Paving, Inc. v. County of Peoria, Ill.*, No. 10-CV-1045, 2013 WL 916212, at *6 (C.D. Ill. Mar. 8, 2013) (collecting cases); *see United States v. Bowen,* 194 F. App'x 393, 402 n. 3 (6th Cir. 2006) ("While our legal system stands upon the building blocks of precedent, necessitating some amount of quotation or paraphrasing, citation to authority is absolutely required when language is borrowed."). Courts find various sanctions appropriate in circumstances of plagiarism. *See, e.g., In re Burghoff*, 374 B.R. 681, 687-88 (Bankr. N.D. Iowa 2007) (attorney ordered to complete a law school course on professional responsibility due to plagiarism and court's order forwarded to the state disciplinary board); *Lohan v. Perez*, 924 F. Supp. 2d 447, 460-61 (E.D.N.Y. 2013) (levied a $750.00 fine for attorney's plagiarism in opposition briefing); *A.L. v. Chicago Public School Dist. No. 299*, No. 10 C 494, 2012 WL 3028337, at *6-7 (N.D. Ill. July 24, 2012) (reduced awarded fees to merely 10 percent of requested fees due to attorney plagiarism).

In light of this discussion, Page Etc.'s counsel who signed the brief, Ted Perryman, is strongly warned against using plagiarized material in filings presented to this Court again. Moreover, the plagiarized material in this brief contained descriptions of nonbinding precedent that is quite dated. Aside from being unethical, the Court is baffled as to why Perryman would risk his personal and professional reputation and credibility to pad a responsive brief with content that is marginally instructive, if at all. The sanctions described above serve as a cautionary tale for now, but the Court will not hesitate to impose consequences if counsel continues this practice.

to shareholders, income statements, profit and loss statements, financial statements given to lienholders or banks, financial statements prepared for bondholders, and proxy statements for the issuance of corporate debt for the years of 2016 to 2022. Notably, the vehicle crash underlying this action occurred in 2018. Manier argues that this time frame is reasonable as it covers the two years preceding the accident, the year of the accident, and the years since litigation commenced to determine if Page Etc.'s financial status has changed significantly.

Page Etc. objected to these requests for production regarding its financial condition arguing that Manier has not offered proof establishing a prima facie case of punitive damages or properly asserted a right to punitive damages as required by Illinois law. As such, Page Etc. argues that Manier is not entitled to such discovery, or at the very least, the requests are premature. Moreover, Page Etc. asserts that punitive damages require intent, which has not been properly alleged. Even if financial information is discoverable, Page Etc. contends that five years of various accounting information is grossly overbroad and burdensome, especially when only discovery of a defendant's net worth and pecuniary position are permissible.

In response to Page Etc.'s objections, Manier argues that a prima facie case is not required for punitive damages, intent is not required for punitive damages, and the requested scope is reasonable covering the years shortly before and after the underlying vehicle accident. Manier also asserts that, in a good faith attempt to resolve this dispute without court intervention, his counsel sent Page Etc. a letter explaining the relevance and discoverability of the discovery requests, which received no response even after a subsequent follow-up. Manier urges that, because he properly alleged punitive damages, discovery into Page Etc.'s financial status is relevant and discoverable.

As an initial matter, a defendant's financial status is a relevant factor in determining punitive damages under Illinois law. *See Powers v. Rosine,* 956 N.E.2d 583, 586-87 (Ill. App. Ct. 2011) ("Pursuant to well-established Illinois common law jurisprudence, the financial status of a defendant is relevant…[to] properly assess an award of punitive damages[.]"). Moreover, many district courts in the Seventh Circuit allow discovery into a defendant's financial status where a plaintiff seeks punitive damages. *See United States v. Autumn Ridge Condominium Ass'n, Inc.*, 265 F.R.D. 323, 327-28 (N.D. Ind. 2009) (collecting cases); *see also Breuder v. Board of Trustees of Community College District No. 502,* No. 15-CV-9323, 2021 WL 229655, at *2 (N.D. Ill. Jan. 22, 2021) ("Here, there is no dispute—nor could there be—that the defendants' financial information is relevant to the issue of punitive damages[.]").

Page Etc. seems to concede that evidence of net worth and pecuniary position are typically discoverable when punitive damages are properly alleged. But somewhat confusingly, Page Etc. also points to precedent in the Seventh Circuit, *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508-09 (7th Cir. 1992), to argue that the requested documents pertaining to financial status, net worth, and pecuniary position are actually not discoverable. Many courts within this Circuit have dealt with the *Zazu Designs* argument that Page Etc. raises here.

Some district courts have relied on the language in *Zazu Designs* to render financial information of a corporate defendant inadmissible or undiscoverable. *See Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 586-89 (S.D. Ind. 2000) (finding a corporate defendant's net worth irrelevant to the assessment of punitive damages based on the holding in *Zazu Designs*); *see also Pivot Point Int'l, Inc. v. Charlene Products, Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996) (denying the *admissibility* of corporate defendant's financial information for punitive damage claims based on federal law). Other district courts have categorized the relevant portions in

*Zazu Designs* as dicta and, as such, not controlling. *See Donald v. Wexford Health Sources, Inc.*, 266 F. Supp. 3d 1097, 1098-103 (C.D. Ill. 2017) (thoroughly explaining that the statement in *Zazu Designs* regarding the irrelevance of a corporate defendant's financial condition was dictum); *EEOC v. Staffing Network,* No. 02 C 1591, 2002 WL 31473840, at *4 (N.D. Ill. Nov. 4, 2002) (finding that *Zazu Designs* merely raises a suggestion as to the irrelevance of corporate financial information in assessing punitive damages but notes that a majority of courts reach the opposite conclusion); *see also In re Aqua Dots Products Liability Litigation*, 270 F.R.D. 322, 325-26 (N.D. Ill. 2010) (emphasizing that *Zazu Designs* addressed an appeal of damage calculations and *Pivot Point* addressed admissibility, so in the discovery phase where a defendant's wealth may be admissible related information is discoverable).

The Supreme Court has indicated that a corporate defendant's financial condition is indeed one factor that can be taken into consideration in assessing punitive damages, perhaps without directly holding that such information is relevant. *See TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 463 n. 28, 464 (1993) (referencing *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 21-22 (1991)). Considering the broad discovery rules, the Supreme Court's acquiescence to the consideration of a defendant's financial condition, and the many district courts that allow discovery into a defendant's financial status for assessment of punitive damages, the Court is unpersuaded by the mere reference to *Zazu Designs* in Page Etc.'s brief. The Court finds that defendant's financial information could be relevant to the issue of punitive damages in this case.

The next question is whether Manier properly alleged punitive damages. As described above, Page Etc. argues that Manier has not offered proof establishing a prima facie showing of entitlement to punitive damages or properly asserted a right to punitive damages. Notably,

plaintiffs seeking punitive damages are routinely permitted to discover such financial information prior to making a prima facie case that punitive damages are recoverable. *See Marshall v. GE Marshall, Inc.*, No. 2:09 cv 198, 2012 WL 2343368, at *4 (N.D. Ind. June 20, 2012) (collecting cases); *see also E.E.O.C. v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 236 (E.D. Wis. 1996) ("[D]efendant's contention that the plaintiff needs to make a prima facie showing of entitlement to punitive damages in order to gain access to the defendant's financial information is not adequately supported by the case law.").

Illinois law permits punitive damage awards when torts are committed with fraud, actual malice, deliberate violence or oppression, or when a defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights or safety of others. *Barton v. Chicago and North Western Transp. Co.*, 757 N.E.2d 533, 554 (Ill. App. Ct. 2001) (citing *Kelsay v. Motorola, Inc.*, 384 N.E.2d 353, 359 (Ill. 1978)). A viable claim for punitive damages requires more than simply pleading intent or that a defendant knew or should have known it was breaching its duty. *Stephens v. Navient Solutions, Inc.*, No. 14 C 1528, 2016 WL 6804560, at *5 (N.D. Ill. Nov. 16, 2016); *see also Worthem v. Gillette Co.*, 774 F. Supp. 514, 517 (N.D. Ill. 1991). To compel discovery of a defendant's net worth, the plaintiff cannot simply rely on broad, conclusory allegations in the complaint. *Lanigan v. Babusch*, No. 11 C 3266, 2011 WL 5118301, at *4 (N.D. Ill. Oct. 27, 2011).

Manier's Fourth Amended Complaint (Doc. 113) includes allegations that Page Etc. knew or should have known about Dalpra's criminal and driving violation history, but also that, "[t]hese repeated violations and poor driving and criminal history are evidence of Defendant Page Etc. Inc.'s willful and wanton conduct exhibiting a reckless disregard or indifference for the safety of others in its employment or contracting with Defendant Mario

Dalpra." These allegations, paired with the rest of the complaint, are not merely conclusory. The complaint contains sufficient detail to describe the conduct Page Etc. exhibited that demonstrated a willful and wanton disregard for the safety or rights of others, within the meaning assigned by Illinois courts.

After determining that financial information is relevant to assessing punitive damages and that Manier adequately alleged punitive damages, the Court now considers whether the present discovery requests are overly broad or burdensome. Here, Manier seeks a wealth of information from Page Etc., including income tax returns, balance sheets, annual reports or other financial statements or disclosures issued to shareholders, income statements, profit and loss statements, financial statements given to lienholders or banks, financial statements prepared for bondholders, and proxy statements for the issuance of corporate debt for the years from 2016 to 2022. In opposition to these requests, Page Etc. contends that only current assets and liabilities as well as a general statement of net worth should be permitted.

While the underlying vehicle accident occurred in 2018, the Court finds that Page Etc.'s financial condition at that time is not relevant. Financial information is discoverable in relation to punitive damages because "an amount sufficient to deter one [defendant] may be trivial to another." *Powers*, 956 N.E.2d at 586. Financial condition at the time of the accident could not reasonably lead to relevant information in determining the appropriate amount of punitive damages to deter Page Etc. from engaging in the alleged wrongdoing in the future. *See Platcher v. Health Professionals, Ltd.*, No. 04-1442, 2007 WL 2772855, at *3 (C.D. Ill. Sept. 18, 2007) ("Only Defendants' *current* assets and liabilities are relevant to the punitive damages claims against them[.]" (emphasis in original)).

Many courts have limited discovery of a corporate defendant's financial information

to the past two or three years. But courts do *not* generally limit discovery to a general statement of net worth. *See, e.g., Autumn Ridge Condominium Ass'n, Inc.*, 265 F.R.D. at 328-29 (permitting discovery of financial documents, including assets and liabilities, loan applications, real properties, mortgages, debt instruments, and tax returns for less than the prior three years); *Breuder*, 2021 WL 229655, at *4 (restricting discovery of financial condition to tax returns, W-2 and 1099 statements, and documents showing large assets and liabilities from the prior two years); *In re Heparin Products Liability Litigation*, 273 F.R.D. 399, 409-10 (N.D. Ohio 2011) (narrowing the scope of discoverable information of financial condition to income tax returns, balance sheets, income statements, and attached schedules from the prior year); *Lane v. Capital Acquisitions*, 242 F.R.D. 667, 670 (S.D. Fla. 2005) (requiring defendant to produce 31 categories of financial records for the past two and a half years).

The Court finds that Manier's requests are overbroad as the information sought dates back to 2016. To the extent that Page Etc. objects to the type of financial information requested, the Court overrules those objections. An objecting party bears the burden of showing why a particular discovery request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). Here, other than merely arguing discovery should be limited to current information and a general statement of net worth, Page Etc. does not raise any specific objection to the types of financial information requested with any legal support.[2] Thus, the Court finds that only a time limitation is necessary to address the overbroad nature of the requests. The requested documents shall be produced from January 1, 2021, to present.

---

[2] The sole case cited by Page Etc. to support the proposition regarding a general statement of net worth is *Chenoweth v. Schaff*, 37 F.R.D. 587 (W.D. Pa. 1983). The analysis for this case was plagiarized (see Footnote 1), and therefore, the Court will not consider it. Even considering this case, it holds persuasive weight at best and does not represent the approach in the majority of cases.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** in part Plaintiff Manier's Motion to Compel (Doc. 150) and **COMPELS** Defendant Page Etc. to produce the documents and information requested in Manier's Second Set of Requests for Production paragraphs one to eight from January 1, 2021, to present. The information shall be produced on or before **March 7, 2023.** If Page Etc. desires a protective order regarding the disclosure of its financial information, the parties are encouraged to confer and agree before submitting a proposed protective order to the Court.

**IT IS SO ORDERED.**

DATED:   February 15, 2023

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**