IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JAMES MANIER,

    Plaintiff,

v.

PAGE ETC., INC.,

    Defendant.

Case No. 3:20-CV-00329-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Plaintiff James Manier formerly worked as a commercial truck driver for US Foods. (Doc. 289-1, p. 17). On the evening of April 4, 2018, Manier operated a tractor pulling double trailers travelling northbound on Interstate 57 near Benton, Illinois. (*Id.*; Doc. 293-1, pp. 24-25). Another driver shared the same roadway—Mario Dalpra.[1] (Doc. 293-1, p. 24). Dalpra drove for Defendant Page E.T.C., Inc. ("Page E.T.C."), an environmental transport company responsible for hauling hazardous waste. (Doc. 289-2, p. 14; 289-4, p. 5). As Manier slowed down in response to fully stopped traffic and road construction, Dalpra's tractor trailer, weighing between 20 and 25 tons, collided with Manier's. (Docs. 289-1, pp. 62-63; 293-1, pp. 25, 53-54).

    The parties dispute many details of the crash. Dalpra claims to have been steering around a right-hand curve travelling at the speed limit, posted as 70 miles per hour.

---

[1] The parties advised the Court that Mr. Dalpra passed away during the pendency of this litigation. While Mr. Dalpra was originally a defendant, Plaintiff Manier recently filed an amended complaint eliminating all claims against him. (Doc. 310).

(Doc. 289-2, pp. 28-31). To the contrary, Manier contends that the area leading up to the crash was flat and straight, with no visual obstruction to other motorists, as corroborated by dash cam footage.[2] (Doc. 293-12, pp. 64-65). Dalpra highlights that Manier primarily used his engine brakes, which do not illuminate the brake lights, to slow down. (Doc. 289-1, pp. 62-63). Manier only used his pedal brakes, which trigger brake lights, after he slowed to 10 miles per hour. (*Id.* at pp. 63-64). But Manier emphasizes that Dalpra admitted to seeing brake lights when he realized the tractor-trailer in front of him was decelerating. (Doc. 293-1, p. 35). Manier's accident reconstruction expert, Dr. Mariusz Ziejewski, opined that Dalpra proceeded at 68 to 72 miles per hour when he struck Manier's trailer. (Doc. 293-3, p. 11). On the contrary, Dalpra estimated that his speed was about 35 to 40 miles per hour at the moment of impact. (Doc. 289-2, p. 32).

Manier also contends that Dalpra drove distracted while engaging in an hour-long telephone conversation via his hands-free headset leading up to the collision. (Doc. 293-1, pp. 38-46). At the time of the crash, Manier was evidently using a hands-free headset to talk on his phone as well. (Docs. 289-1, p. 84; 293-12, pp. 83-84, 93). A representative of Page E.T.C., Chris Jorolemon, testified that the company had a policy permitting its drivers to use hands-free devices while on the road. (Doc. 289-4, pp. 55-56, 59, 66). Dalpra testified that he understood this to be Page E.T.C.'s policy at the time of the accident. (Doc. 289-2, pp. 41-42).

---

[2] Manier references dash cam footage in his response and labels it "Exhibit D." This footage was provided to the Court for review via email.

Manier further alleges that Dalpra was an incompetent and unqualified commercial driver and Page E.T.C. knew or should have known as much. (Doc. 310, pp. 2-3). Manier emphasizes Dalpra's lack of training and general knowledge of fundamental commercial driving principles pointing to Dalpra's deposition testimony and a report by Manier's trucking expert, Michael Napier. (Doc. 293-1, pp. 72-88). Napier opined that Dalpra failed to demonstrate the required knowledge, skills, and safety techniques, consistent with commercial motor vehicle safety standards, to maintain control and avoid the collision. (Doc. 293-4, pp. 26-27). Of course, Manier attributes this lack of baseline knowledge to Page E.T.C.'s failure to train Dalpra properly.

In addition, Manier criticizes Page E.T.C. for its ignorance of "red flags" in Dalpra's application process. According to Manier, Dalpra listed an Indiana address on his application but presented a Kentucky commercial driver's license ("CDL"). (Doc. 293-4, p. 47). Jorolemon testified that the issue would have been discussed with Dalpra at orientation, and to his knowledge, Dalpra used two residences of family members—one in Indiana and one in Kentucky—for mailing purposes, but mainly lived on the road. (Doc. 293-5, p. 147). Page E.T.C. was satisfied that he possessed only one CDL, which was valid, and updated his address to the Kentucky address. (*Id.*).

In the 10 years prior to applying at Page E.T.C., Dalpra worked at two companies, U.S. Bulk and T & T Leasing. (Doc. 293-4, pp. 148-49). Evidently, Dalpra was discharged from his most recent employer, T & T Leasing, related to two recent, non-DOT recordable accidents. (Docs. 293-4, pp. 147-49; 293-13, pp. 269-70; 293-18). Both accidents occurred in

early 2017—one accident involved changing lanes and striking another car with no fatalities, tow away, or hazardous materials, and the other involved backing into a pole. (Doc. 293-18). According to Napier, these undisclosed accidents and termination deemed Dalpra a high-risk applicant. (Doc. 293-4, p. 50).

Page E.T.C. received permission to run pre-employment screening as to Dalpra, which may have revealed maintenance violations, hours of service violations, or other infractions, but Page E.T.C. declined to do so. (Doc. 293-5, pp. 150-51). Now, Page E.T.C. runs this screening as to every applicant, but at the time of Dalpra's hiring, it was discretionary. (*Id.*). Dalpra also had multiple criminal violations related to operating with an expired or suspended CDL. (Docs. 293-8; 293-9; 293-10; 293-11). These violations occurred in Ohio and Indiana in the 1990s and early 2000s. (*Id.*).

During his deposition, Dalpra was pressed as to his knowledge of basic driving principles. (Doc. 293-1, pp. 63-93). For example, when asked how many feet it would take to stop a tractor-trailer at the weight of his truck and a speed limit of 70 miles per hour, Dalpra testified that he could not remember. (*Id.* at p. 88). And when asked further whether the appropriate distance would be 50 versus 100 feet or more, Dalpra responded, "I don't know." (*Id.* at pp. 88-89). Based on Dalpra's testimony and his inability to respond and slow down to the traffic ahead of him resulting in the motor vehicle accident at issue, Napier opined that Dalpra lacked the required knowledge, skills, and safety techniques to adequately perform the job. (Doc. 293-4, pp. 27-28). On the contrary, Page E.T.C.'s transportation compliance expert, Dennis Burke, opined that Dalpra was qualified to

operate a commercial motor vehicle, Page E.T.C. reasonably hired him, and Page E.T.C. had an adequate training program. (Doc. 289-10, pp. 4-6).

In this suit, Manier proceeds against Page E.T.C. on three claims: Count I for negligence, Count II for negligence per se, and Count III for respondeat superior liability. (Doc. 310). Manier seeks punitive damages based on his theories of distracted driving, Page E.T.C.'s failure to adequately train Dalpra, and Page E.T.C.'s improper hiring and failure to screen Dalpra's application with the appropriate caution and investigation. Page E.T.C. filed a motion for partial summary judgment regarding the availability of punitive damages given the facts surrounding the underlying motor vehicle accident.[3] (Doc. 287). Manier opposes the motion. (Doc. 292).

## LEGAL STANDARD

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Assertions that a fact cannot be or is genuinely disputed must be supported by materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials. FED. R. CIV. P. 56(c)(1). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[3] Due to the subsequently filed amended complaint, the Court will consider the pending motion for partial summary judgment only as to the arguments regarding Defendant Page E.T.C.

Case 3:20-cv-00329-NJR    Document 328    Filed 01/03/25    Page 6 of 14    Page ID #4790

323-24 (1986).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson*, 477 U.S. at 255. In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## DISCUSSION

In each count, Manier asserts that Page E.T.C.'s conduct was willful and wanton exhibiting a reckless disregard or indifference for the safety of others. (Doc. 310). As such, Manier believes this conduct entitles him to punitive damages. Among other things, Manier asserts that Page E.T.C. had a duty to assess whether Dalpra lacked the required ability, fitness, and qualifications to operate a commercial vehicle and to properly train, educate, and monitor its drivers so they would operate tractor-trailers in a reasonably safe fashion. Manier claims that Page E.T.C. acted willfully and wantonly in failing to fulfill these duties. Page E.T.C. moves for summary judgment arguing that no reasonable trier of fact could find Page E.T.C. acted willfully, with actual malice, or with such gross negligence as to indicate a wanton disregard for the rights of others, as is required for a

Page 6 of 14

punitive damages award.

In Illinois, punitive damages represent a type of relief as opposed to an independent cause of action. *Brummel v. Grossman*, 121 N.E.3d 970, 998 (Ill. App. Ct. 2018). "Punitive damages serve to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." *Fogt v. 1-800-Pack-Rat, LLC*, 74 N.E.3d 186, 202 (Ill. App. Ct. 2017); *see also Neuhengen v. Global Experience Specialists, Inc.*, 109 N.E.3d 832, 861 (Ill. App. Ct. 2018). Ordinary negligence, such as mere inadvertence or mistake, does not justify an award of punitive damages. *Fogt*, 74 N.E.3d at 202. Rather "[t]he conduct must be outrageous" and involve "some element of outrage similar to that usually found in crime." *Id.* (quoting *Loitz v. Remington Arms Co.*, 563 N.E.2d 397, 415-16 (Ill. 1990)). "Such damages may be awarded when, among other things, the defendant acts willfully or with such gross negligence as to indicate a wanton disregard of the rights of others." *McQueen v. Green*, 202 N.E.3d 268, 282 (Ill. 2022).

While imposition of punitive damages is a decision for the jury, the initial determination of whether punitive damages may be awarded in a particular case is a matter of law for the trial judge to decide. *Abrams v. FedEx Ground Package Sys., Inc.*, 585 F. Supp. 3d 1131, 1145-46 (S.D. Ill. 2022). To do so, the trial court must first determine as a matter of law whether the cause of action generally and the facts of the case particularly provide sufficient proof of aggravated circumstances to warrant submitting the issue to the trier of fact. *Id.* at 1145. "If the facts of the case legally justify an award of punitive damages, the issue is then submitted to the trier of fact." *Id.* (quoting *Wolinsky v. Kadison*,

987 N.E.2d 971, 989 (Ill. App. Ct. 2013)).

### i. *Distracted Driving*

Page E.T.C. first moves for summary judgment on Manier's punitive damages claim regarding Dalpra's distracted driving—primarily, talking on his cell phone for at least an hour leading up to the crash. Page E.T.C. contends that the Federal Motor Carrier Safety Regulations allow tractor-trailer operators to use hands-free devices for cellular telephone use, citing Sections 392.80 and 392.82 of Title 49 of the Code of Federal Regulations, which prohibit texting or use of a *handheld* device while driving a commercial vehicle. In addition, Page E.T.C. asserts that it maintains a cell phone policy for its drivers in alignment with the federal regulations, and Dalpra was not only aware of the policy, but in compliance with it. Page E.T.C. also points out the hypocritical nature of this argument given that Manier was also using a hands-free device to talk on the phone at the time of the accident.

Manier claims that the lethal danger of distracted driving is well-known and understood. This danger, according to Manier, is also compounded by the fact that Dalpra operated a large, heavy tractor-trailer hauling hazardous materials and remained on the phone for a long and continuous period. Manier argues that Dalpra wantonly disregarded this danger by engaging in distracted driving rather than taking care to remain alert and attentive. Manier also charges Page E.T.C. with taking a careless position towards distracted driving and failing to uphold effective policies and procedures for proper communication, including failure to set reasonable prohibitions against unlimited

use of cell phones.

The Court finds that no reasonable jury could find Dalpra's use of a hands-free cell phone warrants punitive damages in this case. Certainly, Dalpra's hands-free cell phone use is relevant for the underlying claim of negligence and determining liability, but it is not the type of outrageous or reckless conduct that warrants punitive damages. This type of cell phone use is permitted by the federal regulations, and without more, cannot substantiate a claim of punitive damages. Manier urges that the context—the weight and size of the truck, the nature of carrying hazardous substances, the duration of the phone call, and the fact that an accident ensued because Dalpra failed to slow down—presents more, but the Court disagrees. Using a hands-free device is permissible for commercial vehicle drivers and there is no regulation limiting duration of hands-free cell phone use. The regulations regarding hands-free devices are no different for drivers handling hazardous materials. It is also not lost on this Court that Manier was engaged in the same conduct.

Moreover, the evidence shows Page E.T.C. had a policy regarding cell phone use at the time. Manier criticizes the policy as merely verbal. Even if Page E.T.C. failed to enact a written policy at the time of the accident, Dalpra testified that he was aware of Page E.T.C.'s policy, the requirement of a hands-free device, and consequences of using a handheld device such as a fine and automatic firing. The Court cannot find that the lack of a written policy by Page E.T.C. demonstrates its willful and wanton disregard for the rights of others, especially given that a policy consistent with federal regulations was

communicated to Dalpra in some form.

Manier also cites to several cases to support the proposition that evidence of cell phone use is relevant and important for juries to hear. The majority of his cited cases discuss cell phone use as evidence of negligence and liability—not in relation to punitive damages. As to his persuasive authority related to wanton conduct or punitive damages, the cases cited are distinguishable from the situation here. In *Tutor v. Sines*, the court explained that mere distracted driving does not constitute substantial evidence of wantonness. 380 So. 3d 1035, 1040-41 (Ala. 2023). Rather, the court held that distracted driving in situations of active phone use like texting, browsing the internet, or engaging with a music app, paired with the fact that the driver was speeding while cresting a hill and looking at the phone right before impact, could demonstrate wantonness. *Id.* In *Purdy*, the court referenced evidence that the professional driver engaged in cell phone use with a substantial "data transfer" at the time of the collision, ran a red light, sped, and drove from the right side of the truck while using cruise control. *Purdy as Tr. of Survivors of Jones v. Metcalf in & for Cnty. of Pima*, 252 Ariz. 270, 277-78 (Ariz. Ct. App. 2021). The court held that this evidence of a series of events of deliberate bad faith or breaches of duty, not merely using a cell phone, could lead a trier of fact to find the requisite mental state for punitive damages. *Id*.

As to Dalpra's distracted driving, Page E.T.C.'s motion for partial summary judgment related to punitive damages is granted.

        ii.    *Knowledge, Retention, Entrustment, Hiring, and Training of Dalpra*

Page E.T.C. next moves for summary judgment on Manier's punitive damages claim as to its knowledge, retention, entrustment, hiring, and training of Dalpra. Page E.T.C. argues that it provided Manier with Dalpra's valid CDL, numerous investigative forms into Dalpra's safety performance history revealing only two minor accidents before his employment with Page E.T.C., multiple documents related to Dalpra's driving violations and driving record, Dalpra's employment application, medical certifications, a hazardous material endorsement, and signature pages related to orientation and training. These records, according to Page E.T.C., expose no misconduct by Dalpra or a lack of fitness to perform the job.

In response, Manier insists that Page E.T.C. failed to implement effective management controls and systems to ensure the reasonable certification and qualifications of Dalpra. For example, Dalpra listed an Indiana address as his residence while holding a Kentucky CDL, and Manier contends that Page E.T.C. failed to inquire into whether Dalpra had a valid CDL from his home state. Further, Manier asserts that Page E.T.C. failed to investigate Dalpra's previous employment and safety performance history, including his discharge from employment at T&T Leasing, which Dalpra omitted from his application. According to Manier's trucking expert, these undisclosed accidents and termination deemed Dalpra a high-risk applicant.

Additionally, Page E.T.C. purportedly failed to investigate Dalpra's background, including receiving permission for, but not inquiring into, a pre-employment screening

program, which may have revealed other infractions by Dalpra. Manier also alleges that Page E.T.C. failed to obtain Dalpra's motor vehicle records from states where he lived and worked including Pennsylvania, Ohio, Tennessee, and Indiana. Another area allegedly neglected by Page E.T.C. was Dalpra's criminal background. Apparently, Dalpra had multiple criminal violations related to operating with an expired or suspended CDL.

Specific to training, Manier highlights Dalpra's lack of knowledge of basic driving principles demonstrated throughout his deposition. Based on his deposition answers and inability to slow down in time to avoid the underlying accident, Manier's expert, Napier, opined that Dalpra lacked the required knowledge, skills, and safety techniques to adequately perform the job.

On the other hand, Page E.T.C. asserts that all the instances of driving violations and operating with an expired or suspended CDL occurred over 15 years prior to his hiring at Page E.T.C. And its transportation compliance expert, Burke, opined that Dalpra was qualified to operate a commercial motor vehicle, his hiring by Page E.T.C. was reasonable, and Page E.T.C. had a compliant training program for its drivers.

As to hiring, the Court finds that no reasonable jury could find that Page E.T.C. acted with an evil motive or with a reckless indifference to the safety of others in hiring Dalpra. While Dalpra omitted his recent discharge and accidents from his application, Page E.T.C. sent inquiries to his two former employers. Page E.T.C. discovered the two recent minor accidents, resolved the address issue between Kentucky and Indiana, and

determined that Dalpra held a valid CDL with decades of prior experience. A jury may determine that Page E.T.C. was negligent in hiring Dalpra given his application and background, but the record does not give rise to an inference of its wanton disregard or reckless indifference to the safety of others in hiring Dalpra. Moreover, the fact that Page E.T.C. failed to conduct a pre-employment screening program inquiry and criminal background investigation at most demonstrates negligence. Dalpra had decades of commercial driving experience, and his infractions for operating with an expired or suspended CDL occurred a decade and a half prior to his employment with Page E.T.C. Because Manier has not shown the intent necessary to submit the issue of punitive damages to a jury as to hiring, Page E.T.C.'s motion for summary judgment is granted on this claim.

As to training, the Court declines to foreclose imposition of punitive damages. At this stage, the Court is bound to view all evidence and reasonable inferences in favor of Manier. A jury could interpret Dalpra's deposition testimony regarding basic driving principles, paired with Manier's expert opinion evidence and the lack of training records, as demonstrating Page E.T.C.'s failure to properly train Dalpra in the basic principles of commercial motor vehicle operations and that such lack of training directly contributed to his failure to slow down appropriately in response to traffic before the accident. In doing so, a jury may be able to find gross negligence or wanton disregard on behalf of Page E.T.C. A jury could just as readily determine that Page E.T.C. provided adequate training to Dalpra through its orientation program and ongoing training and that

Dalpra's testimony merely states that proper driving is situational and invites many variables. A jury may also deem the fact that Dalpra held a valid CDL and possessed decades of driving experience in finding no gross negligence or wanton conduct on behalf of Page E.T.C. But because the Court cannot assess credibility and must view all inferences in favor of Manier, the Court will let punitive damages move forward as to training.

## CONCLUSION

For these reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment (Doc. 287). The Court grants summary judgment as to punitive damages for cell phone use and hiring. The Court denies summary judgment on the issue of punitive damages as to training; that issue will go to the jury.

**IT IS SO ORDERED.**

DATED: January 3, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**